**Susanne LITTLEFIELD, Plaintiff,**

v.

**Wally MACK, Santa Maria Realty and Malcom McGuffey, Defendant,**

**and**

**State Farm General Insurance Company, Garnishee Defendant.**

**No. 88 C 9803.**

United States District Court, N.D. Illinois, E.D.

Feb. 7, 1992.

---

MEMORANDUM OPINION
AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Susanne Littlefield ("Littlefield"), who is white, sued Malcolm McGuffey ("McGuffey"), also known as Wally Mack among other persona, claiming he denied her rental housing and harassed and intimidated her because her boyfriend, the father of her daughter, is black. She sued McGuffey for violation of the civil rights laws and the Fair Housing Act under 42 U.S.C. §§ 1982, 3604, 3613, 3617, and for intentional infliction of emotional distress under Illinois common law. On July 26, 1990, a jury found for Littlefield and awarded her $50,000 in compensatory damages and $100,000 in punitive damages.[1]

The plaintiff subsequently brought a motion to recover attorney's fees pursuant to 42 U.S.C. § 1988 ("Section 1988") and § 3613(c)(2). On November 16, 1990, the court granted plaintiff Littlefield's motion and determined that Littlefield was entitled to recover attorney's fees in the amount of $138,252.50 and expenses in the amount of $9,676.98. Because $1,361.50 had already been paid, the court found defendant McGuffey liable for attorney's fees in the amount of $146,567.98. In a subsequent order dated December 10, 1990, the court awarded the plaintiff an additional $16,636.50 in attorney's fees and $10,797.88 in expenses.[2]

On January 23, 1991, the plaintiff served State Farm General Insurance Company ("State Farm"), defendant McGuffey's insurance company, with a garnishment summons seeking the recovery of the $174,002.36 in fees and expenses previously awarded to the plaintiff. State Farm subsequently filed a motion to dismiss or stay the garnishment proceedings which the court denied on August 21, 1991. In so ruling, the court found that the sole issue involved in the federal garnishment proceedings was the recovery of the attorney's fees and costs assessed against McGuffey.

This case is currently before the court on plaintiff Littlefield's and garnishee-defendant State Farm's cross motions for summary judgment on the question of whether State Farm is obligated to pay on defendant's behalf the attorney's fees and expenses awarded to the plaintiff under Section 1988. For the reasons stated below, the plaintiff's motion for summary judgment is granted and the garnishee-defendant's cross motion for summary judgment is denied. State Farm is ordered to pay the plaintiff the attorney's fees and expenses

---

1. On January 27, 1992, the Court of Appeals affirmed the jury's verdict 954 F.2d 1337 (7th Cir.).

2. The court's decision regarding the award of attorney's fees and costs to the plaintiff has recently been upheld by the Seventh Circuit. *See Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992).

already assessed against defendant McGuffey in this case.

### The Motions for Summary Judgment

A motion for summary judgment should be granted when the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Wolf v. Fitchburg*, 870 F.2d 1327 (7th Cir.1989). After the moving party makes a properly supported motion for summary judgment, the nonmoving party bears the burden of refuting the motion by setting forth specific facts showing the existence of a genuine issue of fact for trial. *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When assessing the validity of a summary judgment motion, the court must view all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

██ The determination of the parties' summary judgment motions in this case turn on the proper reading of the State Farm Insurance Policy No. 93–18–7446–0 ("the policy"), effective May 24, 1988 to May 24, 1989, entered into by State Farm and McGuffey. In pertinent part, Section II of the policy states:

We cover the following in addition to the limits of liability:

1. Claim expenses. We pay:

a. expenses incurred by us and costs taxed against any insured in any suit we defend; ...

The plaintiff contends that State Farm is obligated to pay the attorney's fees and expenses awarded to her by the court since Section 1988 establishes that attorney's fees in civil rights cases constitute costs and since State Farm's contract with defendant McGuffey states that State Farm will pay all costs taxed against the insured in any suit State Farm elects to defend. State Farm counters that it is not obligated to pay the fees and costs assessed against the defendant because attorney's fees do not constitute costs and State Farm did not elect to defend McGuffey's case as the plaintiff suggests.

██ State Farm argues that the term "costs" as used in its insurance contract with McGuffey cannot include attorney's fees as the plaintiff suggests because the common understanding of the term "costs" and its historical use do not intend the term to encompass attorney's fees. However, attorney's fees and litigation expenses, while generally not recoverable as costs, can be recovered if provided for by statute or contract between the parties. *Hall v. Cole*, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973). Of particular importance in this case, Section 1988 provides for such recovery. The statute clearly states that an individual prevailing on a civil rights claim may receive "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The Supreme Court and the Seventh Circuit have upheld this reading of Section 1988 on numerous occasions. *See, e.g., Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *Hutto v. Finey*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir.1988); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987).

Indeed, in *Argento*, the Seventh Circuit specifically applied Section 1988's grant of attorney's fees as costs to an insurance contract provision similar to the provision at issue in this case. 838 F.2d 1483. The defendant insurance company in *Argento* argued that the pertinent policy, which stated that the insurer would pay "all costs taxed against the insured in any suit defended by the company," did not contemplate the payment of attorney's fees as costs. *Id.* at 1499. Since the court found that Section 1988 specifically designates that fees are allowed as part of costs, the court held that regardless of the defendant's interpretation of the insurance policy, the defendant was responsible for the attorney's fees awarded to the plaintiff in the civil rights action. *Id.*

**912**

■ Like the court in *Argento*, this court finds that under the terms of the pertinent policy, defendant State Farm is clearly responsible for paying attorney's fees as part of the costs assessed against defendant McGuffey. As already noted, Section 1988 is extremely clear that attorney's fees constitute costs in civil rights suits and *Argento* demonstrates that Section 1988's rule applies to insurance policies such as the policy at issue in this case. In addition, as the plaintiff suggests, "statutes in existence at the time a contract is entered are considered as much a part of the contract as if they were expressly incorporated, and the contracting parties are deemed to accept these laws as part of the agreement." *Local 165, International Brotherhood of Electric Workers v. Bradley*, 149 Ill. App.3d 193, 102 Ill.Dec. 20, 32, 499 N.E.2d 577, 589 (1st Dist.1986). Section 1988 was in force at the time State Farm and McGuffey entered into their insurance contract. Therefore, the court holds that State Farm's insurance contract with McGuffey requires it to pay the attorney's fees and expenses awarded to Littlefield.[3]

The defendant also argues that it cannot be held responsible for paying the fees and expenses assessed against defendant McGuffey because it did not provide McGuffey with his defense. Instead, State Farm claims that it merely funded McGuffey's defense. State Farm claims that it only funded the defense in this case because it had a potential fundamental conflict of interest which prevented it from controlling McGuffey's defense.[4] The court disagrees, however, with State Farm's interpretation of its actions. The court does not see a difference in this case between electing to defend McGuffey's case and funding the defense of McGuffey's case as State Farm suggests. Defendant State Farm obtained the law firm of Querrey & Harrow to represent McGuffey. State Farm also paid for their services. Moreover, as the plaintiff notes, in a letter written by State Farm to McGuffey explaining its role in the case, State Farm stated:

*[T]he defense of this action by our attorney in your behalf* is not to be considered a waiver of such policy defense or of any policy defense which may be involved in this case. If we do not hear from you to the contrary, we will assume that it is acceptable *for us to continue handling the case* on these terms. State Farm Memorandum, Exhibit C, p. 4 (emphasis added).

Thus, even its letter suggests that State Farm believed it was responsible for McGuffey's defense. And, as already noted, since responsibility for the defense of the case is the mechanism for invoking coverage of "costs taxed against any insured in any suit we defend," the court finds that State Farm is responsible for paying the fees and expenses awarded to Littlefield because it handled McGuffey's defense.

■ Finally, State Farm argues that it should not be held responsible for paying fees and expenses assessed against McGuffey because it is against public policy to

3. Even if the contract terms at issue in this case could be considered ambiguous, the contract still would be construed against the insurance company. As the Seventh Circuit stated in *National Fidelity Life Insurance Co. v. Karaganis*:

Under Illinois law, an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract. However, if a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured ... Ambiguous language is strictly construed against the insurance company because the insurer is the drafter of the policy ... Thus, the insured's interpretation of an unclear provision must prevail "in order to effectuate 'the predomi-

nate purpose of the contract which is to indemnify the insured.'" 811 F.2d 357, 361 (7th Cir.1987).

4. The policy at issue in this case contains an intentional act exclusion provision which precludes coverage if the damage caused to a third party was expected or intended. *See* State Farm Insurance Policy No. 93–18–7446–0. State Farm contends that it had a potential fundamental conflict of interest with McGuffey because this intentional act exclusion provision might be applicable in this case. State Farm also argues that it might have been exempt from defending the case because McGuffey failed to promptly notify it of this suit as also required by their insurance contract.

allow insurance coverage for attorney's fees awarded under Section 1988. State Farm asserts that the payment of attorney's fees in this instance constitutes the payment of punitive damages which under Illinois law is not permitted to be covered by insurance. *See Beaver v. Country Mutual Insurance Co.*, 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058 (5th Dist. 1981). Contrary to the defendant's contention, the court does not find that the award of attorney's fees in this instance constitutes punitive damages. The legislative history of Section 1988 indicates that the award of attorney's fees may be used to penalize defendants as well as to encourage the enforcement of Section 1988 by compensating those persons who bring meritorious actions. *County of Suffolk v. Royal Globe Insurance Co.*, CCH 1981 Fire Casualty Cases 1457, 1460 (E.D.N.Y. 1981). As the court stated in *County of Suffolk*, "Unlike punitive damages, however, the purpose of awarding attorney's fees to a successful plaintiff is not to punish a defendant for abusive or outrageous conduct. On the contrary, attorney's fees could be awarded even ... where a defendant has acted in clear good faith, but simply in violation of the · Constitution." *Id.* Given that the defendant provides no other evidence to support its reading of the statute and the fact that the plaintiff in this case received a separate award of punitive damages from the jury, the court finds that the award of attorney's fees in this instance does not violate public policy.

Indeed, the court believes that to preclude the payment of attorney's fees in this instance actually would controvert public policy. Parties might be chilled from protecting their rights if they must worry about paying mounting attorney's fees for the prosecution of their civil rights actions. As already noted, Section 1988 was enacted to avoid just this problem. Thus, to deny Littlefield the recovery of her attorney's fees would controvert the public policy, established by Section 1988, of compensating individuals who prosecute meritorious civil rights violations.

In addition, the court notes that State Farm easily could have avoided responsibility for the payment of the fees and expenses assessed against McGuffey. For example, State Farm, the party responsible for the drafting of its contract with McGuffey, could have excluded the Section II provision which provided coverage for costs assessed against the defendant in suits State Farm defends. State Farm also could have chosen not to defendant the instant lawsuit. As State Farm emphasizes, due its potential conflict of interest with defendant McGuffey in this case, and the possibility that insurance coverage would be precluded by the intentional act exclusion provision in the policy or McGuffey's failure to promptly notify State Farm about the instant suit, State Farm was not automatically required to defend this suit on McGuffey's behalf. As State Farm suggests, for example, it could have declined to defend the suit and awaited judgment, or sought a declaratory judgment against McGuffey to clarify that it was not responsible in this case. Therefore, the court grants plaintiff Littlefield's motion for summary judgment and denies garnishee-defendant State Farm's cross motion for summary judgment.

### Conclusion

For the reasons stated above, the court grants Littlefield's motion for summary judgment and denies State Farm's cross motion for summary judgment. State Farm is ordered to pay the plaintiff the attorney's fees and expenses already assessed against defendant McGuffey in this case.